**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Kathy L. Ink, | : | Case No. 3:07 CV 3908 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION AND ORDER** |
| | : | |
| Defendant. | | |

Plaintiff seeks judicial review of a final decision of the Commissioner denying her applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 416 (i) and 423, Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U. S. C. §§ 1381 and 405(g) and Disabled Widows Benefits under Title 42 U.S.C.§ 402 (e). Pending are Briefs on the Merits filed by the parties and Plaintiff's Reply (Docket Nos.18, 19 and 20). For the reasons set forth below, the case is remanded to the Commissioner, pursuant to sentence four of 45 U. S. C. § 405(g).

**PROCEDURAL BACKGROUND**

Plaintiff filed applications for SSI and DIB on July 28, 2004 (Tr. 14). The claims were denied initially and on reconsideration (Tr. 48-50, 255). Plaintiff filed a claim for Disabled Widow's Benefits (DWB) on October 25, 2005. The DWB claim was escalated to the hearing level and on November 23, 2005, a hearing on all claims, SSI, DIB and DWB, was held before Administrative Law Judge (ALJ) Frederick McGrath (Tr. 269). Plaintiff, represented by counsel, and Vocational Expert (VE) Robert Bond appeared and testified. On May 26, 2006, the ALJ rendered an unfavorable decision finding that Plaintiff was not disabled as defined under the Act (Tr. 14-20). The Appeals Council denied Plaintiff's request for review on November 2, 2007, rendering the ALJ's decision the final decision of the Commissioner (Tr. 4-6).

**JURISDICTION**

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

**FACTUAL BACKGROUND**

**1.    Plaintiff's Testimony and Evidence**

Plaintiff has a high school education and past work as a cook, dishwasher, secretary, sales person, assistant manager and cosmetologist (Tr. 33, 69, 80, 294, 296-997). She had been married for fifteen years when her spouse died on June 29, 2004, and in October 2005, she reached age fifty. She testified that she had one adult child (Tr. 291-292).

Plaintiff had a long history of back problems dating back to 1988 while she was living with her parents. She recalled that one evening, she retired in a normal manner but was awakened the next morning by severe pain radiating down her sciatic nerve. She was unable to put weight on her left leg. Shortly

thereafter, she was hospitalized for a week before undergoing emergency surgery. After surgery, Plaintiff continued to have back pain which she described as moderate to extreme pain; however, she was able to walk (Tr. 273-274, 284). She began to experience numbness in her left foot and thighs after surgery (Tr. 276). Eventually, Plaintiff was diagnosed with foot drop (Tr. 286).

Plaintiff returned to work for approximately 1½ years but stopped working when she re-married. While working in her garden her back "went out" (Tr. 220, 275). Later her physician determined that she had a ruptured disc (Tr. 275). Plaintiff relieved her back pain by applying ice packs and limiting her physical activities (Tr. 275-276, 282).

In 1996, Plaintiff had a second surgery which provided some relief but left her right calf numb (Tr. 276). Plaintiff returned to work as a cook for five months (Tr. 278, 296). In this job, Plaintiff worked up to five hours per day. She stood and carried items to and from a cooler (Tr. 277).

In October 2000, Plaintiff ruptured a disc in her neck (Tr. 278-279). She underwent another surgery. Her right arm which previously was numb and dangling, straightened but she continued to have tingling fingers. Severe soreness restricted movement of her neck. She suspected that she had arthritis in her neck (Tr. 279).

Plaintiff claimed that she could not hold her head in a prone position for extended periods of time as it pulled the back of her neck. She opined that her right arm was weaker than her left. The numbness in her fingertips radiated toward her hands. Occasionally she had difficulty manipulating her fingers (Tr. 280, 292). Plaintiff wore a back brace for comfort (Tr. 282). She was limited to a shower because she could not sit in the bathtub. She had an assistive device to retrieve her clothing (Tr. 283).

Plaintiff estimated that she could sit up to twenty minutes and walk approximately five minutes before sitting (Tr. 284). She had to lie down three times daily for one half hour each time to relieve her pain (Tr.

284-285).  She could stand for five minutes before the onset of pain in her left foot.  She could walk five to eight minutes before sitting down and she had difficulty bending, stooping and climbing stairs (Tr. 285-286). She could not walk at a competitive pace because her left foot "kind of hung behind" (Tr. 286).  Plaintiff could not lift her arms over her head (Tr. 288-89).  Crop dust and cold weather interfered with her ability to breathe (Tr. 289).  She had difficulty concentrating or thinking during the day (Tr. 290).

Plaintiff could not ride in a car for more than one hour without stopping every hour to stretch (Tr. 287).  She also had urinary frequency and bowel problems (Tr. 287-88).  During a typical night, Plaintiff slept for four hours, went to the bathroom, returned to sleep for approximately two hours, went to the bathroom, "grabbed a snack" and then attempted to return to sleep (Tr. 290).  Approximately four nights weekly, Plaintiff had "crying spells" (Tr. 291).

**2.     VE Testimony**

The VE testified that an individual of Plaintiff's age, education, work background and capability for light work, unable to climb ladders, ropes and scaffolds, no balancing job requirements, avoiding exposure to, and avoiding even moderate exposure to unprotected heights and dangerous machinery, could perform Plaintiff's past relevant work as a secretary, fast food cook, sales person or assistant manager, all as Plaintiff performed them and as they are described in the DICTIONARY OF OCCUPATIONAL TITLES (DOT) (Tr. 293-294).  Plaintiff could perform her past work as a cook as she performed it but not as it was defined in the DOT (Tr. 294).

There are approximately 1,200 secretary jobs, 100 unskilled cook/dishwasher jobs, 1,300 fast food cook jobs and 2,300 sales person assistant manager jobs in the region.  The number of jobs is the result of research completed by the VE using, *inter alia*, the "Bureau of Labor and Statistics Occupational Employment Statistics," Ohio Department of Job and Family Services Statistics and the Ohio Bureau of

4

Employment Statistics and Department of Labor census reports, DOT and its companion volume, SELECTED CHARACTERISTICS OF OCCUPATIONS (SCO) (Tr. 294-295). These jobs are within economic region 11 which is located in Southeast Ohio (Tr. 295).

The hypothetical person would be unable to perform the required job duties if the person's restrictions included standing/walking half an hour total in an eight-hour day, also half an hour at a time without interruption, sitting limited to three to four hours in an eight-hour day, half an hour at a time without interrupting, lifting and carrying up to five pounds either frequently or occasionally, extremely limited in pushing, pulling and bending (Tr. 297). If frequent handling were required, the hypothetical person could not perform any of Plaintiff's past relevant work (Tr. 299). If a person were unable to sit for more than 20 minutes at a time and at that point get up and just stand at a workplace, but move around and walk around to stretch things out, there would be an erosion of approximately 95% of the sedentary jobs (Tr. 300). If the hypothetical person were unable to sustain a downward looking gaze for more than a few minutes, an erosion of 10% would apply to sedentary jobs and 15% for light jobs.

The attendance requirements for these jobs include an absenteeism rate of six to twelve days per year. Anything exceeding twenty four days per year would be considered excessive and such person would be unemployable in any work situation (Tr. 295).

## **MEDICAL EVIDENCE**

**1.    Akron General Medical Center (Tr. 124-132).**

On August 25, 1998, Plaintiff underwent several surgical procedures including a decompression laminectomy at L3-4 on the left side and L4-5 on the right side, removal of herniated discs and removal of the nerve root compression at L3, L4 and L5 (Tr. 126, 129).

**2.    Dr. Dane Donich (Tr. 133-142).**

Dr. Donich conducted a discectomy with fusion and anterior cervical plating on October 31, 2000

(Tr. 140). X-rays of Plaintiff's cervical spine showed that the plate was in place on November 2, 2000 (Tr. 138, 139). On November 13, 2000, Plaintiff presented with some left shoulder pain (Tr. 137). Evidence of anterior spinal fusion at the C6-7 level was noted on November 28, 2000 (Tr. 136). On December 4, 2000, Dr. Donich noted that the film of Plaintiff's cervical spine showed that it was stable. Plaintiff's left shoulder pain had abated (Tr. 135).

**3.     Dr. Eddie Estrada (Tr. 197-202).**

An obstetrician and gynecologist, Dr. Estrada performed tests to determine whether Plaintiff had a urinary tract infection and to assess the etiology of excessive uterine bleeding (Tr. 197). Plaintiff's alkaline phosphatase level was lower than the recommended reference range (Tr. 200).

**4.     Fabrizio Chiropractic Clinic (Tr. 216-222).**

Dominic A. Fabrizio, D.C., a chiropractor, treated Plaintiff in 2000 (Tr. 217). On February 8, 2005, he conducted a re-examination. He found that Plaintiff had a severe case of displaced discs in her spine at C1, C2, C3, C4 and C5 (Tr. 220). In Dr. Fabrizio's opinion, Plaintiff was unemployable and her impairments were expected to last more than twelve months. She could only stand/walk for one half hour in an eight-hour workday, stand/walk one half hour without interruption, sit for three to four hours and sit for one half hour without interruption. She was extremely limited in her ability to push/pull, reach and handle (Tr. 219).

**5.     Dr. Barry J. Greenberg (Tr. 164-173; 265-267).**

Dr. Greenberg, an orthopedic surgeon, performed a decompression laminectomy and removed a herniated disc on July 11, 1988 (Tr. 172). In September 1988, Dr. Greenberg found that Plaintiff's neurological deficit was gone except for a slight numbness in her inner thigh.

Plaintiff complained of continued inner thigh numbness and low back pain on January 28, 1991 (Tr. 171). In September 1996, Plaintiff had residual tingling in her right leg. Dr. Greenberg performed another

laminotomy at the L4-5 on the right side and discovered a large extrusion and a free fragment of disc at L4-5. A herniated disc on the right side was also removed (Tr. 170). Plaintiff's leg pain was totally gone on October 17, 1996 (Tr. 169). In August 1998, Plaintiff complained of groin pain, pain in the front of the thigh that radiated down to the knee and severe left leg pain. Disc fragments were removed, freeing the nerve roots (Tr. 168).

On October 6, 2000, Plaintiff complained of increasing problems with neck pain. Dr. Greenberg attributed the pain to degenerative narrowing at C5-6 and C6-7. An anti-inflammatory drug and traction set were prescribed (Tr. 167). On October 25, 2000, Plaintiff experienced a tremendous amount of pain and weakness. The results from the magnetic resonance imaging (MRI) test showed a large C6-7 disc rupture (Tr. 166).

X-rays of Plaintiff's back showed a solid C6-7 fusion with a plate with degenerative arthritis of both on July 27, 2004. There was also evidence of degenerative narrowing at L3-4, L4-5 and L5-S1. Dr. Greenberg considered Plaintiff totally disabled and unable to work with the myriad of problems she was facing (Tr. 165).

In an opinion submitted to the Appeals Council dated October 17, 2006, Dr. Greenberg opined that Plaintiff was unemployable because she could only stand/walk for two hours, stand/walk for less than one hour without interruption, she could not sit and she could only push/pull, bend and engage in repetitive foot movements with extreme difficulty (Tr. 265). In his assessment, Dr. Greenberg reported that Plaintiff was disabled as a result of having a cervical disc with a cervical fusion and three lumbar discectomies and bladder/bowel problems (Tr. 266).

6.     **Dr. Rachel L. Johnson (Tr. 173-196).**

A physician of osteopathic medicine, Dr. Johnson, did not treat Plaintiff for back and/or neck problems (Tr. 174). In May 2000, Dr. Johnson addressed issues related to cystitis (Tr. 191). She determined

7

from a lipid panel administered in May that Plaintiff's cholesterol and red blood cell distribution levels were elevated and Plaintiff's white blood cells in the vertebrate immune system were lower than normal (Tr. 192, 194).  She performed a pelvic laparoscopy on June 22, 2000 (Tr. 180).  Finally, Dr. Johnson administered B12 and folic acid shots for anemia on July 6 and July 20, 2000 (Tr. 177).

7.    **Mercy Hospital (Tr. 143-163; 205-215).**

Tissue removed from an endocervical polyp on April 19, 1993, showed benign changes in the lining of the cervix (Tr. 212).  Plaintiff's red blood cell count was slightly lower and her white blood cell count was substantially higher than the recommended reference range on October 18, 1995 (Tr. 205).  There was evidence that Plaintiff's uric acid levels were lower than normal and her cholesterol was higher than normal (Tr. 206).  Plaintiff's mammographic screening showed no evidence of malignancy in June 1999 (Tr. 201).

On May 25, 2000, the X-rays of Plaintiff's chest showed a normal chest (Tr. 185).  Plaintiff underwent a diagnostic and treatment surgery on June 2, 2000 (149-163, 182-184).  In September 2000, Plaintiff was diagnosed with degenerative disc disease at the C5-C6, C6-C7 levels with bone spur and stenosis (Tr. 146).  The treating physician, Dr. J. Cepeda, noted on November 29, 2000, that the fusion performed by Dr. Donich in October was successful (Tr. 145).  A small ovarian and a fibroid cyst were observed during a pelvic echogram administered on December 28, 2000 (Tr. 144).

8.    **Physical Residual Functional Capacity Assessments (Tr. 223-238).**

On January 5, 2005, Dr. Anton Freihofner conducted two separate reviews of the evidence.  First, he assessed Plaintiff's exertional, postural, communicative, visual, manipulative and environmental limitations given her disc disease and cervical fusion.  Second, Dr. Freihofner assessed Plaintiff's exertional, postural, communicative, visual, manipulative and environmental limitations given the severity of her arthritis and stenosis.

    A.    **Degenerative Disc Disease and Cervical Fusion at C6-7**.

Based upon his review of the evidence, Dr. Freihofner opined that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and/or pulling (Tr. 224). Climbing using a ladder, rope or scaffold was contraindicated (Tr. 225). Otherwise, there were no manipulative, visual, environmental or communicative limitations (Tr. 226-227).

**B.     Degenerative Arthritis and Extensive Narrowing at L3-4/L4-5/L5-S1.**

Dr. Freihofner opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and/or pulling (Tr. 232). Climbing using a ladder, rope or scaffold and balancing were contraindicated. Plaintiff could occasionally climb using a ramp or stairs, stoop, kneel, crouch or crawl (Tr. 233). Plaintiff should avoid even moderate exposure to hazards (Tr. 235). Plaintiff had no manipulative, visual or communicative limitations (Tr. 234-235). The examiner found that Plaintiff's statements about her symptoms were partially credible (Tr. 236).

On March 22, 2005, Dr. Lynne B. Torello reviewed all the file evidence and affirmed Dr. Freihofner's assessments of January 5, 2005.

**9.     St. Thomas Medical Center (Tr. 116-123).**

On September 12, 2006, Plaintiff underwent a laminectomy on the right side with the removal of a herniated disk (Tr. 117).

## STANDARD OF DISABILITY

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively. In order to establish entitlement to DIB or SSI under the Act, a claimant must prove an inability to engage un any substantial gainful activity by reason of any medical determinable physical or mental impairment which

9

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C. F. R. § 404.1505(a) and 20 C. F. R. § 416.903(a) (Thomson Reuters/ West 2008). The Act requires the Commissioner to follow a "five-step sequential process" for claims of disability. *Heston v. Commissioner of Social Security,* 245 F.3d 528, 534 (6th Cir. 2001) (*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)).

First, plaintiff must demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time he or she seeks disability benefits. *Id.* ( *citing* 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id*. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (*citing* 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)).

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.* (*citing* 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)).

Fourth, if the plaintiff's impairment does not prevent her or him from doing his or her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent him or her from doing past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Abbott,* 905 F.2d at 923).

## **ALJ'S DETERMINATIONS**

Employing the standard of disability, the ALJ considered the testimony adduced at the hearing and the medical evidence set forth above and made the following findings:

1.  Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.

10

2. Plaintiff had a severe disorder of the spine. She did not have a severe mental impairment. Plaintiff did not have an impairment or combination of impairments that met or equaled the listing of impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

3. Plaintiff had the residual functional capacity to perform light work that did not involve balancing or climbing ladders, ropes or scaffolds. Plaintiff was able to lift and carry up to twenty pounds occasionally, and up to ten pounds frequently and in an eight-hour period, she was able to sit or stand/walk for a total of six hours each. She also needed to avoid even moderate exposure to unprotected heights and dangerous machinery.

4. Plaintiff was capable of performing past relevant work as secretary, cook/dishwasher, salesperson/assistant manager. These jobs did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

6. Plaintiff was not under a disability for purposes of DIB, SSI or DWB at any time through the date of this decision or May 26, 2006.

(Tr. 14-20).

This decision became the final decision of the Commissioner on July 27, 2007, when the Appeals Council denied review (Tr. 4-6).

## STANDARD OF REVIEW

Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (1994) (*citing Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id*. (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984)).

In determining the existence of substantial evidence, the reviewing court must examine the

administrative record as a whole. *Id*. (*citing Kirk*, 667 F.2d at 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

## DISCUSSION

Plaintiff seeks reversal and/or remand based on three arguments. First, the ALJ failed to attribute controlling weight to Dr. Greenberg's July 2004 opinion. Second, the ALJ failed to consider Dr. Fabrizio's opinion. Third, the ALJ erred in his evaluation of Plaintiff's pain and credibility.

*1.     Dr. Greenberg's Opinion*

Plaintiff contends that the ALJ erred by finding that Dr. Greenberg's decision was not supported by substantial evidence. In the alternative, the ALJ erred by summarily rejecting Dr. Greenberg's opinion without explanation and rejecting Dr. Greenberg's conclusion that she was unable to sustain work at any exertional level.

Plaintiff's arguments invoke the treating physician rule. The ALJ must give the opinions of a treating source controlling weight if he or she finds the opinion well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004) (*citing* 20 C. F. R. § 404.1527(d)(2)). If a treating physician's opinion is not given controlling weight, the ALJ must continue to weigh it under a number of factors set forth in the Regulations "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)).

A mandatory procedural requirement appears in the Regulations. Specifically, good reasons must be given in the notice of determination of decision for the weight given the claimant's treating source's opinions. *Id*. (*quoting* 20 C.F.R. § 404.1527(d)(2)). This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* The reason-giving requirement "exists to let claimants understand the disposition of their cases, particularly in situations where a claimant's physician has deemed him disabled and the administrative agency tells him or her that he/she is not disabled. *Id*. (*citing Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1990)).

It is the duty of the Social Security Administration-often through an ALJ-to resolve a claimant's disability status by, in part, weighing the medical source opinions under the above standards. *Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir. 2007). No special significance will be given to opinions of disability coming from a treating physician. *Id.* This is so because in the context of social security cases, the term "disability" is an administrative finding. 20 C.F.R. § 404 .1527(e); 20 C. F. R. § 416.927(e) (Thomson Reuters/West 2008). No matter what type of medical source is at issue, the ultimate opinion by a treating source that a person is under a "disability" does not mean that a determination of disability is automatically accepted. 20 C.F.R. § 404.1527(e); 20 C. F. R. § 416.927(e) (Thomson Reuters/West 2008).

Turning to the sufficiency of the evidence, it is clear that the ALJ considered Dr. Greenberg a treating source. He found that Dr. Greenberg had ordered several X-rays, an MRI, and a computed tomography (CT) scan to assess the etiology of Plaintiff's neurological deficits (Tr. 17, 18, 19). In the opinion of the ALJ, Dr. Greenberg's decision was supported by substantial evidence. He clearly relied upon this medical evidence to determine the nature and severity of Plaintiff's back impairments. Plaintiff's claim that the ALJ erred by finding that Dr. Greenberg's decision was not supported by substantial evidence lacks merit.

However, the ALJ rejected Dr. Greenberg's conclusion that Plaintiff was totally disabled. He gave

three reasons for rejecting such opinion. First, the opinion was not consistent with the objective medical evidence. Dr. Greenberg referred Plaintiff to Dr. Donich when a disc ruptured (Tr. 166). Dr. Donich performed a discectomy with fusion and anterior cervical plating on October 31, 2000 (Tr. 140). Evidence of spinal fusion at the C6-7 level was noted as early as November 28, 2000 (Tr. 136). On December 4, 2000, Dr. Donich noted that the film of Plaintiff's cervical spine showed that it was stable (Tr. 135). There is no evidence that Plaintiff underwent treatment for her cervical spine until she saw Dr. Greenberg in July 2004. Approximately four years later, Plaintiff presented to Dr. Greenberg with complaints of pain. The X-rays taken at that visit showed a solid fusion with extensive degenerative arthritis and extensive degenerative narrowing of disks (Tr. 165). This diagnosis does not automatically translate into an impairment that lasted for the requisite twelve months or a diagnosis that was expected to last for the requisite twelve months. Thus, the sole assessment based on an isolated consultation cannot be determinative of disability in this case.

Second, Dr. Greenberg's report showed the aggravation of an impairment that had been stable for three years. It failed, however, to provide probative evidence of whether the aggravation of the impairment significantly limited Plaintiff's physical or mental ability to do basic work activities or whether she could engage in substantial gainful activity as a result of the aggravation.

Third, the ALJ was not required to credit Dr. Greenberg's opinion that Plaintiff is disabled. The law in the Sixth Circuit is clear that the Commissioner is not bound by the opinions of the claimant's treating physician who indicates that the claimant is totally disabled.

In determining if the ALJ's decision regarding the treating physician is supported by substantial evidence, the Magistrate finds that the ALJ followed the applicable regulations. He attributed controlling weight to the opinions of Dr. Greenberg that were supported by substantial evidence. He discounted the opinion of Dr. Greenberg that failed to offer evidence required to determine the extent of Plaintiff's limitations

14

and he appropriately rejected Dr. Greenberg's opinion that Plaintiff was disabled. The Magistrate finds that the ALJ properly applied the treating physician rule.

*2.     The Chiropractor's Opinion*

Plaintiff argues in a footnote that the ALJ erred in rejecting the opinion of his chiropractor simply because he was not an acceptable source. Plaintiff concedes that the Act does not acknowledge that a chiropractor is an acceptable medical source. However, Plaintiff takes issue with the ALJ's refusal to consider the Dr. Fabrizio's findings as "other evidence" subject to evaluation to the extent that "other evidence" may be considered.

Under the plain language of the regulations, a treating source under 20 C.F.R. § 404.1513(a) or 20 C. F. R. § 416.913(a) must be a *medical* source such as a licensed physician, licensed psychologist, licensed optometrist, licensed podiatrist and a qualified speech pathologist. Chiropractic opinions are not listed as one of the five types of "acceptable medical sources" but are instead listed under the separate heading of "other [non-medical] sources." *Walters, supra*, 127 F.3d at 530 (*cf* 20 C.F.R. § 404.1513(a) (1997) *with* 20 C.F.R. § 404.1513(e) (1997)). Under the current regulations, the ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all evidence in the record since a chiropractor is not a medical source. *Id*. (*citing See Diaz v. Shalala,* 59 F.3d 307, 313-14 (2nd Cir. 1995); *see also Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991) (reading 20 C.F.R. § 404.1513 as "accord[ing] less weight to chiropractors than to medical doctors")).

In this case, the ALJ considered Dr. Fabrizio's opinion finding that he treated Plaintiff in 2000 and then he reexamined Plaintiff once on February 9, 2005 (Tr. 217). Such limited treatment suggests that even if Dr. Fabrizio were an acceptable source, the ALJ would not have attributed significant weight to his opinions as they were not supported by objective medical evidence. The ALJ appropriately exercised his discretion

in rejecting Dr. Fabrizio's reports as they were inconsistent with other medical evidence and they were from an unacceptable source.

3.   *The ALJ's Evaluation of Pain and Credibility*

Plaintiff argues that the ALJ failed to follow the regulations for the evaluation of pain and other symptoms. Plaintiff contends that the ALJ's decision simply does not address whether Plaintiff's current condition could reasonably cause the pain and limitations she reported.

Where the objective medical evidence does not substantiate the claimant's subjective complaints, the ALJ must pass on the credibility of the claimant in making those complaints. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's findings as to credibility are entitled to deference because he or she has the opportunity to observe the claimant and assess the claimant's subjective complaints. *Buxton v. Commissioner*, 246 F. 3d 762, 773 (6th Cir. 2001) (*citing Gaffney v. Bowen,* 825 F. 2d 98, 101 (6th Cir. 1987); *Kirk, supra,* 667 F. 2d at 538).

An individual's statements as to "pain or other symptoms will not alone establish that [he is] disabled . . ." *Walters, supra*, 127 F. 3d at 531 (*citing* 20 C.F.R. § 404.1529(a)). The Sixth Circuit developed a two-prong test to evaluate a claimant's assertions of disabling pain. *Id.* First, the fact finder must examine whether there is objective medical evidence of an underlying medical condition. *Id.* If there is, the fact finder must then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* (*citing Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994) (*quoting Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1529(a)).

If the ALJ rejects the claimant's complaints as incredible, he or she must clearly state his or her reasons

16

for doing so. TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SOCIAL SECURITY RULING (SSR) 96-7p, 1996 WL 374186, *1 (July 2, 1996). It is not sufficient for the adjudicator to make a single, conclusory statement that the "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR, 1996 WL 374186 at *2. It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. SSR, 1996 WL 374186 at *2. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR, 1996 WL 374186 at *2. The adjudicator may not disregard the claimant's statements about the intensity or persistence of pain and other symptoms solely because they are not substantiated by objective medical evidence. SSR, 1996 WL 372186 at *1.

In this case, the ALJ made a conclusory statement that Plaintiff's statements about her physical condition were not entirely credible since they were not consistent with the objective medical evidence. This finding fails to follow the findings required in the regulations or in Sixth Circuit case law. There is no explanation of the weight given to Plaintiff's statements or the reasons for that weight. Thus, the Magistrate cannot conduct meaningful review of whether the credibility determination is supported by substantial evidence; therefore, remand is required. On remand, the Commissioner must (1) evaluate Plaintiff's symptoms, including pain, and make a finding about the credibility of these statements and their functional effect; (2) explain the factors considered in assessing the credibility of the Plaintiff's statements about symptoms; and (3) explain the reasons for the credibility finding.

## **CONCLUSION**

For these reasons, the Commissioner's decision is reversed and remanded, pursuant to sentence four

of 42 U. S. C. § 405(g), with instructions to assess credibility consistent with the regulations and case law.

    **IT IS SO ORDERED**.

                                                  <u>/s/ Vernelis K. Armstrong</u>
                                                  United States Magistrate Judge

Date:  February 3, 2009